[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15466
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00155-CV-5-S-MD

DEBORAH A. GARRED,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 16, 2010)

Before BLACK, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Deborah A. Garred appeals the district court's order affirming the Social Security Administration's denial of her application for disability benefits. Garred asserts the Administrative Law Judge (ALJ) erred by (1) rejecting the opinion of her treating physician, Dr. Crayton, that Garred met the criteria under Medical-Vocational Listing 14.09 for inflammatory arthritis; (2) concluding Garred's testimony regarding disabling pain, limitations, and fatigue caused by her rheumatoid arthritis (RA) was not credible; and (3) finding Garred could perform semi-skilled work without first addressing whether she had transferable skills. We address Garred's contentions in turn and affirm.

We review the Commissioner's factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is "more than a scintilla, but less than a preponderance" and would be accepted by a reasonable person as adequate evidence to support a conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). We do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

2

The Social Security regulations establish a five-step sequential process for determining whether a claimant is disabled and thus entitled to disability benefits. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must first demonstrate that she has not engaged in substantial gainful activity and second show she has a severe impairment or combination of impairments. *Id.* Under the third step, if the claimant can prove that her impairment "meets or equals a listed impairment, she is automatically found disabled." *Id.* Otherwise, the claimant must move to the fourth step and "prove that she is unable to perform her past relevant work." *Id.* If the claimant makes that showing, the burden shifts to the Commissioner under the fifth step to demonstrate that the claimant can perform other work available in the national economy. *Id.* In this case, Garred only challenges the ALJ's findings with respect to steps three and five.

## I.

With regard to step three, Garred contends the ALJ erred by not accepting her physician's determination that her condition was a listed impairment, inflammatory arthritis, automatically entitling her to disability benefits. Although the ALJ should consider a physician's opinion that a claimant meets or equals a listed impairment, the ALJ need not give that opinion dispositive weight because the final responsibility for deciding that issue is reserved to the Commissioner. 20

C.F.R. 404.1527(e)(2). Generally, the opinion of a treating physician "must be given substantial or considerable weight, unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons." *Id.* at 1241 (quotation omitted). When the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records," we have held the district court had good cause for disregarding the physician's opinion. *Id.* at 1241.

The opinion of Garred's physician that Garred had inflammatory arthritis was conclusory and contradicted by substantial evidence. To meet the criteria for inflammatory arthritis, a claimant must show "persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively . . . or one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively." 20 C.F.R. pt. 404, subpt. P., app. 1, § 14.09. When Dr. Crayton first provided a form indicating Garred met Social Security Adult Listing 14.09, Inflammatory Arthritis, he left the medical findings section of the form blank. Dr. Crayton later submitted a second form simply quoting the statutory language describing inflammatory arthritis in the space reserved for his medical findings. Dr. Crayton wrote: "History of joint pain,

4

swelling, and tenderness, and signs of current physical examination of joint inflammation or deformity in two or more joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in [Listing] 14.00B6b and 1.00B2b and B2c." As it merely defined the condition in its explanation for why he believed Garred suffered from the condition, his opinion was wholly conclusory.

Next, there was substantial evidence that Garred did not have an "inability to ambulate effectively" or "to perform fine and gross movements effectively." *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 14.09. An inability to ambulate effectively means an "an extreme limitation of the ability to walk," such as when a person needs to use a walker, two crutches, or two canes, or when a person cannot perform routine activities such as shopping or banking. 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(b)(2). Although Garred was once reported as favoring her right foot when she walked, and although she claimed to experience discomfort after ten minutes of walking, she did not use a cane or walker and was able to do some light grocery shopping and house work and to climb stairs.

Inability to perform fine and gross motor movements refers to an extreme loss of functioning in both hands. 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(c). Examples include an inability to prepare a simple meal, take care

5

of personal hygiene, sort and handle papers and files, or place files in a cabinet at or above waist level. *Id.* There was evidence presented that Garred was able to use her hands to carry some groceries, hold and feed her infant, do light cooking, and wash dishes.

In this case, the ALJ was not required to give dispositive weight to Dr. Crayton's opinion that Garred's symptoms met Listing 14.09 because that determination was reserved to the Commissioner. Moreover, Dr. Crayton's opinion was conclusory and was inconsistent with substantial evidence indicating Garred was able to ambulate effectively and retained the ability to function in her upper extremities. Therefore, the ALJ did not commit reversible error in making findings that differed from those of Garred's treating physician.

## II.

Garred next claims the ALJ erred in finding Garred's testimony about her pain and fatigue was not fully credible. If the ALJ decides not to credit a claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In evaluating the credibility of a claimant's testimony regarding her symptoms, the ALJ may consider, *inter alia*: (1) the claimant's daily activities; (2) "the location, duration frequency and intensity" of the pain and other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the "type, dosage, effectiveness, and side effects of any medication"; and (5) other treatments the claimant uses to relieve her pain. 20 C.F.R. § 404.1529(c)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations and alterations omitted).

In this case, Garred's testimony concerning her symptoms was inconsistent with some of the medical evidence in the record. Garred testified she experienced flare-ups of her RA two to three times per month, for periods of up to two weeks. Her medical records, however, showed only eight flare-ups between November 2002 and November 2005, and did not support Garred's assertions of disabling pain. In addition, although there is some independent evidence that Garred suffered from fatigue, this evidence did not describe how frequently Garred's fatigue occurred. The ALJ was, therefore, not required to accept Garred's testimony of daily, disabling fatigue or pain that interfered with her ability to work. We conclude the ALJ's credibility finding is supported by substantial evidence.

Lastly, Garred contends the ALJ erred in finding Garred could perform semi-skilled work without first addressing whether she had transferable skills. We review the Commissioner's legal conclusions *de novo*. *Ingram*, 496 F.3d at 1260. The Social Security regulations explain that a claimant has transferable job skills when the skilled or semi-skilled work activities that she performed in the past can be used to meet the requirements of other jobs. 20 C.F.R. § 404.1568(d)(1). The Social Security Administration, however, explains transferable skills "will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work." S.S.R. 82-41. When the issue of transferability does not affect the determination of whether the claimant is disabled, the ALJ need only state that transferability of job skills is not material. Soc. Sec. Admin. Programs Ops. Manual Sys. (POMS), § DI 25015.015(B)(3)(c).

Under the Medical-Vocational Guidelines (Grids) a "younger individual" between the ages of 18 and 44 with a high school diploma who is limited to sedentary work, such as Garred, is generally not considered to be disabled even if she lacks transferable job skills. *See* 20 C.F.R. pt. 404, subpt. P, app. 2,

8

§§ 201.00(h)(2),(3), 201.28. The ALJ, thus, did not consult the vocational expert (VE) as to the transferability of Garred's skills, because he determined, pursuant to the regulations, that transferability was immaterial.

When a claimant has non-exertional impairments that significantly limit her ability to work, the ALJ may use the Guidelines as a framework, but should also consult with a VE to determine how the claimant's impairments affect her ability to perform other jobs that exist in the national economy. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Because Garred had non-exertional impairments, the ALJ used the Grids as a general framework and sought testimony from a VE, not as to transferability, but as to whether her impairments adversely affected her ability to perform other work and to determine what other work existed for a person of her abilities in the national economy.

The VE testified that a person with Garred's age, background, and work experience would be able to perform several jobs without extensive training, including dispatcher, security clerk, and information clerk. Because Garred's impairments did not preclude her from performing a range of unskilled and semi-skilled work, the ALJ correctly concluded that transferable skills were not

material to the determination of disability in this case.[1]  Accordingly, we affirm the

Commissioner's denial of Garred's application for disability benefits.

**AFFIRMED.**

---

[1]We need not address Garred's assertion that the ALJ failed to comply with S.S.R. 00-4p by failing to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles, as Garred did not raise the issue before the district court.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

10